McBRIDE, Judge.
This is one of two petitory actions, which were consolidated and tried together in the court below. Despite the fact that counsel for two of the parties treated the matters as though they were suits to fix and establish boundaries, their character of petitory actions has not been altered.
Under docket number 276-746 of the Civil District Court for the Parish of Orleans, Dr. Rivers Frederick brought suit against Edward J. Latos and wife, claiming that he is the owner of Lot 23, together with the buildings and improvements thereon, in the Seventh District of New Orleans, in Square No. 514, bounded by Gen. Ogden, Forshey, Holly Grove and Olive Streets, which begins 120’ from the corner of Gen. Ogden and Forshey Streets, and measures 30’ front on Gen.i *745 Ogden Street, the same width in the rear, by á depth between equal and parallel lines of 150'1".
Edward J. Latos and wife own the adjoining property known as Lot 24, beginning 150' from the corner of Gen. Ogden and Forshey Streets, which has the same ground measurements as Lot 23, owned by Dr. Frederick. Like Dr. Frederick’s property, the Latos lot is improved.
It is alleged that Mr. and Mrs. Latos are in the actual physical possession of a portion of Lot 23, adjoining Lot 24, measuring 2/2"4"' front on Gen. Ogden Street, more or less, with a width in the rear of V, more or less, by a depth of 150T". The averment is made that Latos and his wife refuse to deliver possession of the aforesaid strip of property, which belongs to Lot 23,' to Dr. Frederick. Fie prays for judgment recognizing him as the owner of the strip of ground belonging to Lot 23 and entitled to possession thereof, and condemning the defendants to move a wooden fence enclosing the same.
The defense is that the strip of property claimed by Dr. Frederick belongs to the defendants as part of their Lot 24, which they acquired in June 1943.
Krebs, Civil Engineer and Surveyor, who was produced by and testified for the plaintiff, made his survey on May 7, 1947. He shows the locations of Lots 23 and 24, with the dividing fence between them encroaching on Lot 23 for a distance of 2,2"4/// in front and V in the rear. Krebs took his “bench mark” or starting point from the middle of Palm Street.
Kelly, Civil Engineer and Surveyor, testified as the expert for defendants. His testimony is based on a survey made by his firm, Gilbert & Kelly, on May 27, 1943, which depicts Lot 24 of the square without relation to the lots adjoining it. Although this plan only delineates Lot 24, Kelly places the division fence as encroaching on Lot 23 (Dr. Frederick’s) for V in the front and for about half the depth of Lot 23.
After hearing the two surveyors and viewing their plans, the judge was of the opinion that the situation warranted the appointment of an independent expert, under the provisions of C.P. art. 442. Accordingly, E. L. Eustis, Civil Engineer and Surveyor, was appointed by the judge to study the record and titles and to report to the court in writing after an independent survey. The Eustis survey, made on April 4, 1950, accompanied by a proces verbal, is included in the transcript as evidence in the case. Eustis’ starting point was from an accepted mark on Carrollton Avenue established in 1929, eight or nine blocks away from the property involved in this suit, from whence he ran his line to Square 514.
Eustis found that the division fence encroached over on Lot 23, and that the defendants had possession of a portion of Dr.. Frederick’s lot running the whole depth thereof, measuring 2'2>"2"' in front and tapering to 1'4"4"' in the rear.
Judgment was rendered in favor of plaintiff based on the Eustis survey, and defendants were ordered to surrender possession of the portion of Lot 23 which they hold and to remove the fence enclosing it. Edward J. Latos has perfected this appeal.
Under cross-examination Eustis mentioned that he had surveyed either Lot 23 or Lot 24 some years before, presumably at the request of the then owner. However, we do not find a plan of this previous survey in the record. Counsel for appellant argues that Eustis having made a previous plan of one of the lots in dispute, that circumstance removed him from the category of a disinterested expert, because he could not be expected to make a report at variance with his previous work, and that the trial judge should not have accepted his independent survey, made as the appointed expert of the court. Merely because Eustis made a survey some years prior to this litigation would not of itself be an indicium of prejudice on his part and disqualify him from acting as an independent expert. There is no plausible foundation to counsel’s contention, and we say this particularly in view of the lack of a showing as to what data the earlier survey may have contained.
*746 It is pbvious at once that the appellant is in an unenviable position. It cannot be gainsaid that he has possession of and under fence a portion of Lot 23. Kelly, appellant’s own expert, upon whose evidence appellant pitches his whole case, admits that the Latos fence, which the evidence shows was erected about 1945, encloses and cuts off a strip of Lot 23, measuring 1' in front and running for about half the depth of the lot.
The qualifications of both Krebs and Eustis are shown in the testimony. These men are qualified civil engineers and surveyors of extensive experience. The bench marks utilized by them in laying out their work .seem to be well-defined and determined points removed a considerable distance from each other. Yet, they reached practically the same result, only an insignificant three-fourths of an inch difference in the width of the encroachment being shown as between their surveys.
Kelly at first said he located Lot 24 by following a plan of the Carrollton Land Company Tract made by a surveyor named Theard many years ago, although he could refer to no particular starting point. Under cross-examination, Kelly admitted that he located the lot with reference to fences, buildings, and conditions existing in Square 514. If the Gilbert & Kelly survey is based on the true boundary and delineating lines of the lots, Kelly never did say so. At one point the trial judge interrogated him as to how he would determine the boundaries of the various lots if it should so happen that the buildings and division fences in the square were completely destroyed by fire. The reply was: “I guess in that case it would be a very simple matter. You would not have to worry about anything else.” A survey based on the locations of fences and buildings and on “conditions existing” cannot possibly be of assistance to the court in a case of this sort. Such a survey might, perhaps, be of some utility were the court called upon to pass on a plea of prescription acquirendi causa, but no plea of that nature has been interposed in this case. What we are concerned with is the original and exact lines of the lots, and we, like the trial judge, believe that Eustis’ plan correctly portrays them.
Dr. Frederick in his petition avers that the strip of land of which he claims ownership has a width in front of 2'2"4 more or less, with a width on the rear end of Lot 23 of V more or less. Eustis’ dimensions are 2/3"2"' in front and 1'4"4"' in the rear. While the judgment awards plaintiff slightly more land than he prays for, it is correct for the reason that the evidence tended to enlarge the pleadings, and under his prayer for general relief the showings of Eustis are the proper measure of plaintiff’s recovery.
Counsel’s argument that the $100.-00 expert’s fee o.f Eustis taxed against the defendants by the judgment should have been prorated among the parties is not well-founded. The trial judge properly taxed Eustis’ fee against the. defendants. R.S.1870 § 3744 (now LSA-R.S. 50 :283) provides in part:
“The fees chargeable by the surveyors shall be paid by the party desiring their services; and where the services shall be rendered in obedience to an order of a court in a suit therein - depending, the surveyor shall make and state an account of his fees for his services, written in words at the full length on the, back of one of the plats returned by him to the court, and the same shall be allowed in the bill of costs to be taxed against the losing party as other costs; * See also Williams v. Close, 14 La.Ann. 737.
Mrs. Latos, who was named as a defendant along with her husband, died before the rendition of the judgment below, and the evidence shows that her husband has acquired all of the outstanding interest of her heirs in the property. Therefore the judgment must be revised to take into consideration this situation. Edward J. Latos is the sole defendant.
For the reasons above assigned the judgment appealed from is amended so as to run only against Edward J. Latos, and as thus amended and in all other respects it is affirmed.
Amended and affirmed.